1

2

3

4

5

**UNITED STATES DISTRICT COURT**

6

**DISTRICT OF NEVADA**

7

8   DESIREE M. YOUSHOCK,                          )
                                                  )
9              Plaintiff,                         )   Case No.  2:12-cv-00700-MMD-GWF
                                                  )
10  vs.                                           )   **FINDING AND**
                                                  )   **RECOMMENDATION**
11  MICHAEL J. ASTRUE, Commissioner,              )
    Social Security Administration,               )
12                                                )
               Defendant.                         )
13  _____)

14          This case involves judicial review of administrative action by the Commissioner of Social

15  Security denying Plaintiff Desiree Youshock's ("Plaintiff") claim for disability benefits under Title

16  II of the Social Security Act.  Plaintiff's Complaint (#1) was filed April 26, 2012.  Defendant's

17  Answer (#8) was filed July 27, 2012, along with a Notice of Filing the Administrative Record (#8-

18  1).  This matter has been submitted to the undersigned United States Magistrate Judge for Findings

19  and Recommendations on Plaintiff's Motion for Remand (#12), filed on October 24, 2012;

20  Defendant's Response (#13), filed on November 28, 2012; Defendant's Cross-Motion to Affirm

21  (#14), filed on November 28, 2012; and Plaintiff's Reply (#20), filed on January 28, 2013.

22          Plaintiff seeks judicial review of the Administrative Law Judge's ("ALJ") decision dated

23  September 3, 2010.  (AR 20-30).  The issue before the Court is whether the Plaintiff was disabled

24  from her alleged onset date of July 1, 2008.  (AR 151).

25                                  **BACKGROUND**

26      **A.      Procedural History**

27          Plaintiff filed an application for a period of disability, disability insurance benefits, and

28  supplement security income on July 10, 2008. (AR 144-157).  The Commissioner denied Plaintiff's

1    claims at the initial determination on September 12, 2008.  (AR 101-105).  Plaintiff filed a request

2    for reconsideration of that determination on December 8, 2008.  (AR 106-107).  The Commissioner

3    denied reconsideration on April 3, 2009.  (AR 111-113).  Plaintiff requested an appeal before an

4    Administrative Law Judge on April 13, 2009.  (AR 114-115).  The ALJ conducted a hearing on

5    July 28, 2010.  (AR 73-96).  Vocational Expert Robert Raschke ("Raschke") testified at the

6    hearing.  (AR 89-95).  The ALJ issued an unfavorable decision on September 3, 2010.  (AR 20-30).

7    The Appeals Council denied Plaintiff's request for review on March 14, 2012.  (AR 1-3).  Plaintiff

8    then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).   This matter has

9    been referred to the undersigned for a report of findings and recommendations under 28 U.S.C. §§

10   636 (b)(1)(B) and (C).

11          **B.**      **Factual Background**

12                **I.**      **Treatments**

13          Plaintiff was born on April 17, 1979.  (AR 152).  The bases for Plaintiff's disability claims

14   are asthma, colitis, bilateral kidney stones, lumbar degenerative disc disease, obesity, depressive

15   disorder, and anxiety disorder.  (AR 22, 284, 292, 349).   Plaintiff's last period of employment was

16   as a telemarketer, and lasted until April of 2008.  Prior to this employment, Plaintiff worked as a

17   restaurant manager for at least five restaurants for a period of approximately ten years.  (AR 76-80).

18   Donald Wingard, D.O. provided primary care for Plaintiff from June 2007 to July 2010.  (AR 250,

19   741).  Dr. Wingard initially treated Plaintiff for plantar fasciitis, restless leg syndrome, and lumbar

20   sprain.  (AR 250).  On January 7, 2009, Plaintiff was seen by Arthur Maisto, D.O. for primary care.

21   (AR 461).  Plaintiff complained of "exacerbation of asthma" and "acute low back pain and

22   discomfort."  *Id.*  Dr. Maisto recommended chest and lumbosacral spine x-rays.  *Id.*  Dr. Wingard

23   referred Plaintiff to Desert Orthopedics where she was examined by Dr. Abdi Raissi.  Dr. Raissi

24   noted that Plaintiff "has had extensive conservative treatments for plantar fasciitis [...] which have

25   helped her quite a bit."  (AR 502).  Dr. Raissi concluded this treatment "was completely

26   appropriate," but referred Plaintiff to Dr. Theuvenet to test for "neurologic deficit."  (AR 503).

27   There are no records that indicate any treatment occurred.

28   . . .

1    Plaintiff developed abdominal pain and vomiting and was hospitalized on three occasions

2    from May 2008 through August 2008 for back pain, diarrhea, nausea, kidney stones, and colitis.

3    (AR 286, 301-312, 649).  Victor Grigoriev, M.D. recommended surgery in November 2008, but

4    later records note that her insurance lapsed one day prior to the scheduled surgery.  (AR 371-404).

5    There is no additional evidence of ongoing kidney stone issues.

6        Dr. Wingard ordered a lumbar MRI on April 14, 2009.  (AR 504).  The MRI showed an L5-

7    S1 4.6 mm disk extrusion abutting the thecal sac.  *Id.*  At L4-L5 there was a 6 mm disc extrusion

8    causing a right sided ventral dural deformity and compression of the right l5 nerve sheath.  *Id.*

9    Plaintiff was referred to Daniel Lee, M.D. at the Nevada Orthopedic and Spine Center.  (AR 721).

10   On June 22, 2009, Plaintiff complained to Dr. Lee of aches, pins and needles, numbness, stabbing,

11   and pressure with a pain level of "9-10/10."  *Id.*  Dr. Lee noted Plaintiff has smoked three-quarters

12   of a pack of cigarettes per day for 14 years.  *Id.*  Dr. Lee found Plaintiff's "[h]ip and knee range of

13   motion is without pain" and "[l]imited range of motion of the lumbar spine."  "Straight leg raise is

14   somewhat positive at 30 degrees."  *Id.*  Dr. Lee recommended pain management and physical

15   therapy.  *Id.*  Dr. Lee prescribed pain medications that may cause "drowsiness" and "impaired

16   judgment."  (AR 722).  Patrick McNulty, M.D. of the Spine Center saw Plaintiff on February 18,

17   2010.  (AR 709).  Dr. McNulty noted Plaintiff has a history of lower back pain and minor lower

18   extremity radiation.  *Id.*  Plaintiff "has had physical therapy and has failed conservative measures."

19   *Id.*  Dr. McNulty also noted that an MRI shows no compressive neurologic problems, but L4-5 and

20   L5-S1 degeneration.  Dr. McNulty recommended pain management and consideration of spinal

21   cord stimulator.  *Id.*  Dr. Lee again saw Plaintiff on December 4, 2009, where Plaintiff reported

22   bowel changes.  (AR 714).  Dr. Lee sent Plaintiff to Valley Hospital's emergency room for further

23   evaluation and an MRI.  *Id.*  Dr. Lee treated Plaintiff on April 30, 2010, and she again complained

24   of right lower extremity pain.  (AR 727).  Dr. Lee recommended pain management, lumbar

25   epidurals and facet blocks.  *Id.*  He recommended spinal cord stimulator as a "last option."  *Id.*

26       Pain management specialist Frank Lee, M.D. treated Plaintiff on referral from Dr. Daniel

27   Lee from July 9, 2009 to April 15, 2010.  Dr. Lee's examination showed severe paravertebral

28   tenderness.  (AR 701).  Dr. Lee noted "straight leg raising test is positive on the right around 15

1   degrees" and that "neurological examination of the lower extremities are all within normal limits.

2   *Id.* Dr. Lee prescribed pain medication and lower back injections. (AR 702). On August 6, 2009

3   Dr. Lee recommended a followup with Dr. Daniel Lee regarding surgery for her continued bladder

4   incontinence. (AR 699).

5         Plaintiff was also treated at the Lung Center of Nevada for asthma from March 27, 2008

6   through April 9, 2008. (AR 262-272). A March 27, 2008 pulmonary function test achieved a post

7   bronchodilator FEV1 score of 2.03, or 63% of expected. (AR 271). The notes indicate she was on

8   asthma medication, suffered chronic respiratory insufficiency, continued to smoke, and

9   demonstrated "poor" compliance with the treatment plan. (AR 262). Dr. Wingard's records from

10   February 24, 2009 through July 20, 2010 show that he had prescribed Plaintiff an inhaler and that

11   she had been hospitalized for five days for asthma. (AR 756). Dr. Wingard counseled Plaintiff on

12   smoking cessation on March 13, 2010. (AR 757).

13         In 2007 and 2008, Dana M. Forte, M.D. also provided primary care to the Plaintiff. (AR

14   313-357). Dr. Forte treated Plaintiff for lower back pain and depression. Dr. Forte referred

15   Plaintiff for psychiatric treatment with Shaily Jain, M.D. On February 5, 2008, Dr. Jain diagnosed

16   Plaintiff with major depressive disorder, generalized anxiety disorder, panic disorder, and post

17   traumatic stress disorder, and prescribed pyschotropic medications. (AR 299). Plaintiff reported

18   that her psychological conditions arose out of having been "robbed at gunpoint" and recently served

19   with divorce papers. (AR 298). Plaintiff reported on July 1, 2008 that the prescribed medication

20   had been helpful, but that she continued to suffer severe anxiety. (AR 292). Plaintiff was referred

21   to the Southern Nevada Adult Mental Health Center ("MHC") and seen for psychological and

22   multidisciplinary evaluations on October 27 and 28, 2008 (AR 439). There, she was diagnosed

23   with recurrent major depressive disorder, panic disorder, and anxiety disorder. (AR 437). The

24   MHC's last record for Plaintiff, on December 3, 2008, notes that Plaintiff is "doing fairly well" on

25   her medications. (AR 433).

26             **ii.**      **Consultative Examinations/Opinions**

27        The state agency psychological examiner Pastora Roldan, Ph.D. issued a psychiatric

28   review on September 10, 2008. (AR 344). Dr. Roldan opined that Plaintiff's mental impairments

1    are not severe. *Id.* Dr. Roldan also opined that Plaintiff's functional limitations of daily living,

2    maintaining social functioning, and maintaining concentration, persistence, or pace are all mild.

3    (AR 354). Dr. Roldan found insufficient evidence to support any episodes of decompensation. *Id.*

4    Dr. Roldan concluded that Plaintiff is "stable on medication" and "retains the ability to perform

5    engaged work with the public and retains the ability to understand, remember and perform complex

6    instructional work." (AR 356). Dr. James Rose, the state agency medical examiner, submitted a

7    physical Residual Functional Capacity ("RFC") assessment on September 10, 2010. (AR 365). Dr.

8    Rose opined that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or

9    walk (with normal breaks) for a total of 6 hours in an 8-hour workday, and sit (with normal breaks)

10   for a total of 6 hours in an 8-hour workday. (AR 359). Dr. Rose concluded that Plaintiff "retains

11   the ability to perform light exertion work." (AR 365).

12   Orthopedic surgeon Jerrold Sherman, M.D. performed a consultative examination and

13   evaluation on March 5, 2009. (AR 464). Dr. Sherman reported Plaintiff's chief complaint was

14   lower back pain, which is aggravated by standing or walking for one hour, or sitting or lifting

15   weights heavier than 20 pounds. *Id.* Dr. Sherman determined Plaintiff was 5'3, 203 pounds. (AR

16   465). His examinations of extant x-rays revealed a "moderate to severe" disc space narrowing at

17   L5-S1. (AR 465). Dr. Sherman concluded Plaintiff is able to sit, stand, and walk for six hours

18   during the course of an eight-hour day and can occasionally lift up to 20 pounds. (AR 466).

19   State psychologist Verna Fabella-Hicks, Ph.D. conducted a consultative psychological

20   examination on March 12, 2009. (AR 469). Plaintiff reported suffering from "mood swings,

21   depression, [and] severe anxiety," exacerbated by "jobs, marriage" and other familial stressors. *Id.*

22   Plaintiff stated that she has taken medication "on and off for 6 years and they have been effective."

23   *Id.* Dr. Hicks described Plaintiff's mood as "anxious, nervous, and uneasy." (AR 472). Her short-

24   term memory was judged to be poor. *Id.* Dr. Hicks judged Plaintiff to be "functioning in the Low

25   Average range of cognitive functioning." (AR 473). Dr. Hicks opined that Plaintiff's anxiety and

26   depression may affect her ability to understand, remember, and carry out detailed but

27   uncomplicated instructions. *Id.* She further opined that Plaintiff would have "no problems" with

28   carrying out simple one or two-step instructions. *Id.* Dr. Hicks calculated Plaintiff's global

1   assessment of functioning score at 60, and concluded she would have "no problems with her social

2   interactions." (AR 474). Dr. Hicks recorded diagnostic impressions of depressive and anxiety

3   disorders. *Id.* She opined that Plaintiff "would have difficulty in maintaining employment" but

4   that "it is possible that she may do better in a position that is low stress and involves simple

5   repetitive tasks." *Id.*

6         State agency examiner James Edgcomb, M.D. completed a physical RFC assessment on

7   March 17, 2009 that mirrored the limitations set forth in Dr. Rose's RFC assessment. (AR 490-

8   497). Dr. Edgcomb concluded that although Plaintiff's "allegations are consistent with the

9   objective diagnosis," her "alleged limitations [...] are out of proportion with the objective findings."

10  (AR 495). On April 1, 2009, state agency psychological examiner Susan Kotler, Ph.D. conducted a

11  psychiatric review. (AR 476). Dr. Kotler concluded that Plaintiff has moderate limitations in the

12  functions of daily living and social functioning, and moderate limitation in maintaining

13  concentration, persistence, or pace. (AR 486). Dr. Kotler also submitted a mental RFC assessment

14  on April 1, 2009. (AR 498). She noted plaintiff is moderately limited only in her ability to

15  maintain attention and concentration for extended periods. *Id.* Dr. Kotler's RFC concluded that

16  Plaintiff "is able to maintain attention and concentration for 2-hour work periods to complete

17  simple and detailed tasks." (AR 500).

18        Dr. K. Shin, M.D. completed an Essential Task Questionnaire for the Nevada Department

19  of Health and Human Services on June 24, 2010. (AR 524). Therein, Dr. Shin opined that Plaintiff

20  could not sit for more than 12 minutes or stand/walk for more than 10 minutes. *Id.* No evidence in

21  the record suggests Dr. Shin treated Plaintiff.

22        Treating physician Dr. Wingard completed an RFC on July 5, 2010. (AR 527). Citing

23  Plaintiff's obesity and back pain, Dr. Wingard opined that Plaintiff cannot stand more than 15

24  minutes at a time or more than two hours total in an 8-hour workday, that Plaintiff cannot walk

25  more than 10 minutes at a time or more than one hour total in an 8-hour work day, that Plaintiff

26  cannot sit for more than 20 minutes at a time or more than 2 hours total in an 8-hour workday, and

27  that Plaintiff can only lift five pounds. (AR 526). Dr. Wingard also opined that Plaintiff's legs

28  should be elevated with any prolonged sitting. (AR 527). Dr. Wingard stated that Plaintiff would

1    need to take unscheduled 10-minute breaks during a work day, and would need to miss more than

2    four days of work per month. *Id.* According to Dr. Wingard's assessment, Plaintiff cannot

3    concentrate for more than a total of two hours in an 8-hour work day. *Id.*

4                    **iii.    Administrative Hearing**

5           Administrative Law Judge John Heyer conducted a hearing on July 28, 2010. (AR 73). At

6    the hearing, Plaintiff testified that she stopped working in May of 2008 due to "severe back pain

7    and respiratory issues with asthma." (AR 80). Plaintiff stated that she can stand or walk only for

8    10 to 20 minutes before losing her breath, and that she can only sit for 15 minutes. *Id.* Plaintiff

9    testified that she continues to smoke cigarettes, but has reduced her smoking since suffering from

10   pneumonia in May of 2010. (AR 85). According to her testimony, Plaintiff uses a nebulizer three

11   times a day for 10 or 15 minutes. (AR 86). Due to her ailments, Plaintiff testified, she only sleeps

12   an average of three hours per night. (AR 87). Plaintiff stated that, in the context of a hypothetical

13   workplace, she could alternate between sitting and standing for three hours before she would have

14   to lie down to rest. (AR 89).

15          Vocational Expert Robert Raschke ("Raschke") also testified at the July 2010 hearing.

16   Raschke characterized Plaintiff's nine years of work experience as "restaurant manager." (AR 90).

17   The ALJ asked Raschke if "an individual who is able to lift 20 pounds and can complete a full 8-

18   hour workday if given the option to alternate between sitting and standing as needed" would be

19   able to perform Plaintiff's past relevant work. *Id.* Raschke testified such an individual would not

20   be able, because the restaurant industry does not allow for "sitting and standing as needed." *Id.*

21   Raschke stated, however, that an individual with above hypothetical limitations could perform

22   other work, such as an assembler or cleaner/polisher. (AR 91). Plaintiff's counsel asked Raschke

23   if there is any work for an individual with the following limitations: able to stand for a total of two

24   hours in an 8-hour workday for 15 minutes at a time; able to walk for one hour in an 8-hour

25   workday for 10 minutes at a time; able to sit for two hours in an 8-hour workday for 20 minutes at a

26   time; able to occasionally lift five pounds; requires feet to be elevated with prolonged sitting;

27   requires more than two breaks in an 8-hour work period lasting 10 minutes; and requires missing

28   more than four days of work per month. (AR 92-93). Mr. Raschke responded that there is "no

1  industry that would accept this on any kind of ongoing basis." (AR 94).  Plaintiff's counsel also

2  asked Raschke the following hypothetical: "If the person's concentration was limited to two hours

3  in an 8-hour day, are there any jobs in the past or any other jobs the person would be able to

4  perform?"  *Id.*  Raschke answered that there are no jobs that would accommodate such a limitation.

5  *Id.*

6           **C.      Administrative Law Judge's Decision**

7           The ALJ issued his decision on September 3, 2010.  (AR 20-30).  The ALJ found that

8  Plaintiff was not disabled, because Plaintiff possessed sufficient RFC for work other than her past

9  relevant work.  In reaching this conclusion, the ALJ followed the five-step process set forth in 20

10  C.F.R. § 404.1520(a)-(f).  First, the ALJ found Plaintiff has not engaged in substantial gainful

11  activity since the alleged onset date of July 1, 2008.  (AR 22).  Second, the ALJ initially found

12  Plaintiff has the following severe impairments: asthma, history of colitis, history of bilateral kidney

13  stones, lumbar degenerative disease, obesity, depressive disorder, and anxiety disorder.  *Id.*  The

14  ALJ later stated that "[Plaintiff's] medically determinable mental impairment of depression and

15  anxiety does not cause more than a minimal limitation in [Plaintiff's] ability to perform basic

16  mental work activities and is therefore nonsevere."  *Id.*  Third, the ALJ found Plaintiff does not

17  have an impairment or combination of impairments that meets one of the listed impairments in 20

18  C.F.R. § 404, Subpt. P, Appx. 1 ("Listing of Impairments").  (AR 23).  Fourth, the ALJ determined

19  Plaintiff is unable to perform any past relevant work.  Lastly, the ALJ found that Plaintiff has the

20  RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b) and is therefore

21  not disabled.

22           The Court construes the ALJ's decision as finding only Plaintiff's physical impairments

23  (asthma, colitis, kidney stones, lumbar degenerative disc disease, and obesity) to be severe.  The

24  ALJ analyzed Plaintiff's mental impairments under the four broad functional areas set forth in

25  section 12.00C of the Listing of Impairments: (1) activities of daily living, (2) social functioning,

26  (3) concentration, persistence, or pace, and (4) episodes of decompensation.  (AR 23).  The ALJ

27  found mild limitations in areas (1) through (3) , and no limitations in area (4).

28  . . .

1

**DISCUSSION**

2

**I.      Standard of Review**

3

A federal court's review of an ALJ's decision is limited to determining (1) whether the

4

ALJ's findings were supported by substantial evidence and (2) whether the ALJ applied the proper

5

legal standards. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Delorme v. Sullivan,* 924

6

F.2d 841, 846 (9th Cir. 1991).  The Ninth Circuit has defined substantial evidence as "more than a

7

mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind

8

might accept as adequate to support a conclusion." *Woish v. Apfel*, 2000 WL 1175584 (N.D. Cal.

9

2000) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see also Lewis v. Apfel*,

10

236 F.3d 503 (9th Cir. 2001).  The Court must look to the record as a whole and consider both

11

adverse and supporting evidence. *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Where the

12

factual findings of the Commissioner of Social Security are supported by substantial evidence, the

13

District Court must accept them as conclusive.  42 U.S.C. § 405(g).  Hence, where the evidence

14

may be open to more than one rational interpretation, the Court is required to uphold the decision.

15

*Moore v. Apfel*, 216 F.3d 864, 871 (9th Cir. 2000) (*quoting Gallant v. Heckler*, 753 F.2d 1450,

16

1453 (9th Cir. 1984)).  *See also Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court

17

may not substitute its judgment for that of the ALJ if the evidence can reasonably support reversal

18

or affirmation of the ALJ's decision. *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453,

19

1457 (9th Cir. 1995).

20

It is incumbent on the ALJ to make specific findings so that the court need not speculate as

21

to the findings. *Lewin*, 654 F.2d at 635 (citing *Baerga v. Richardson*, 500 F.2d 309 (3rd Cir.

22

1974)).  In order to enable the court to properly determine whether the Commissioner's decision is

23

supported by substantial evidence, the ALJ's findings "should be as comprehensive and analytical

24

as feasible and, where appropriate, should include a statement of subordinate factual foundations on

25

which the ultimate factual conclusions are based." *Lewin*, 654 F.2d at 635.

26

In reviewing the administrative decision, the District Court has the power to enter "a

27

judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security,

28

with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  In the alternative, the

1  District Court "may at any time order additional evidence to be taken before the Commissioner of

2  Social Security, but only upon a showing that there is new evidence which is material and that there

3  is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*

4  **II.      Disability Evaluation Process**

5  To qualify for disability benefits under the Social Security Act, a claimant must show that:

6          (a)            he/she suffers from a medically determinable physical
7                          or mental impairment that can be expected to result in
                        death or that has lasted or can be expected to last for a
                        continuous period of not less that twelve months; and

8
9          (b)            the impairment renders the claimant incapable of
                        performing the work that the claimant previously
10                          performed and incapable of performing any other
                        substantial gainful employment that exists in the
                        national economy.

11

12  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 42 U.S.C. § 423(d)(2)(A).

13  The claimant has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179,

14  182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996).  To meet this burden, a claimant must

15  demonstrate an "inability to engage in any substantial gainful activity by reason of any medically

16  determinable physical or mental impairment which can be expected . . . to last for a continuous

17  period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  If the claimant establishes an

18  inability to perform his or her prior work, the burden shifts to the Commissioner to show that the

19  claimant can perform other substantial gainful work that exists in the national economy. *Batson*,

20  157 F.3d at 721.

21  **III.      Analysis of the Plaintiff's Alleged Disability**

22  Social Security disability claims are evaluated under a five-step sequential evaluation

23  procedure. *See* 20 C.F.R. § 404.1520(a)-(f).  *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir.

24  2001).  The claimant carries the burden with respect to steps one through four. *Tackett v. Apfel*,

25  180 F.3d 1094, 1098 (9th Cir. 1999).  If a claimant is found to be disabled, or not disabled, at any

26  point during the process, then no further assessment is necessary. 20 C.F.R. § 404.1520(a).  Under

27  the first step, the Secretary determines whether a claimant is currently engaged in substantial

28  gainful activity. *Id.* § 416.920(b).  If so, the claimant is not considered disabled. *Id.* § 404.1520(b).

1    Second, the Secretary determines whether the claimant's impairment is severe. *Id.* § 416.920(c).  If

2    the impairment is not severe, the claimant is not considered disabled. *Id*. § 404.152(c).  Third, the

3    claimant's impairment is compared to the "List of Impairments" found at 20 C.F.R. § 404, Subpt.

4    P, App. 1.  The claimant will be found disabled if the claimant's impairment meets or equals a

5    listed impairment. *Id.* § 404.1520(d).  If a listed impairment is not met or equaled, the fourth

6    inquiry is whether the claimant can perform past relevant work. *Id*. § 416.920(e).  If the claimant

7    can engage in past relevant work, then no disability exists. *Id.* § 404.1520(e).  If the claimant

8    cannot perform past relevant work, the Secretary has the burden to prove the fifth and final step by

9    demonstrating that the claimant is able to perform other kinds of work. *Id.* § 404.1520(f).  If the

10   Secretary cannot meet his or her burden, the claimant is entitled to disability benefits. *Id.* §

11   404.1520(a).

12        Plaintiff contends that the ALJ erred at step three of the analysis by concluding that

13   Plaintiff's impairments are not medically equivalent to any of those in the Listing of Impairments

14   without adequate explanation.  Plaintiff also argues the ALJ erred at step five by (I) affording

15   improper weight to treating physicians' opinions; (ii) failing to properly develop the record; (iii)

16   failing to list all of Plaintiff's impairments in his hypothetical to the vocational expert; and (iv)

17   failing to consider the side effects of Plaintiff's medications.

18        **A.     Plaintiff has not demonstrated error at Step Three**

19        Plaintiff claims the ALJ's conclusory statement that Plaintiff's impairments do not equal a

20   listed impairment is insufficient. If a claimant's impairment does not meet the criteria specified in

21   the listings, he or she is still disabled if the impairment equals a listed impairment. 20 C.F.R. §

22   404.1520(d). If a claimant has more than one impairment, the Commissioner must determine

23   "whether the combination of [the] impairments is medically equal to any listed impairment." 20

24   C.F.R. § 404.1526(a). The claimant's symptoms "must be considered in combination and must not

25   be fragmentized in evaluating their effects." *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir.1995)

26   (citations omitted). A finding of equivalence must be based on medical evidence only.  20 C.F.R. §

27   404.1529(d)(3).

28   . . .

1    "[I]n determining whether a claimant equals a listing under step three of the Secretary's

2    disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests

3    and the combined effects of the impairments." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir.

4    1990).  The ALJ in *Marcia* concluded the "claimant has failed to provide evidence of medically

5    determinable impairments that meet or equal the Listings to Subpart P of Regulation 4 or the

6    duration requirements of the Act" *Id.*  The *Marcia* court noted that "Marcia presented evidence in

7    an effort to establish equivalence." *Id.*   Accordingly, the Ninth Circuit remanded the case "for

8    proper consideration of the step three equivalence[.]" *Id.*  Again in *Lewis v. Apfell*, the Ninth

9    Circuit addressed the adequacy of an ALJ's step-three consideration.  236 F.3d 503, 514 (9th Cir.

10   2001).  The ALJ in *Lewis* "did not discuss the combined effects of Lewis's impairments, or

11   compare them to any listing." *Id.*  The court noted that unlike the claimant in *Marcia*, however,

12   Lewis "offered no theory, plausible or otherwise, as to how his [impairments] combined to equal a

13   listed impairment" and did not "point[] to evidence that shows that his combined impairments

14   equal a listed impairment." *Id.*

15   Here, the ALJ conclusorily stated that "[Plaintiff] does not have an impairment or

16   combination of impairments that meets or medically equals one of the listed impairments[.]" Like

17   the claimant in *Lewis*, however, Plaintiff neither offers a theory nor points to evidence that supports

18   the contention that her impairments equal a listed impairment.  Therefore, the Court finds that

19   Plaintiff has not demonstrated error at step three.

20         **B.     The ALJ did not err at step five the analysis**

21               **I.      The ALJ afforded proper weight to treating physicians' opinions**

22   At step five, the ALJ determines if the claimant is able to perform work other than her past

23   relevant work. *See* 20 C.F.R. § 404.1520(f)(1).  If the claimant is able to do other work, then the

24   Commissioner must establish that there are a significant number of jobs in the national economy

25   that claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).  RFC determination is

26   not a medical finding but an administrative finding left to the Commissioner. *Vertigan v. Halter*,

27   260 F.3d 1044, 1049 (9th Cir. 2001).  The opinion of an examining physician is entitled to great

28   weight because the physician has had the opportunity to observe the patient and assess the patient's

1   impairments.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Moreover, an examining

2   physician's opinion alone can constitute substantial evidence in granting or denying a claim.  *See,*

3   *e.g., Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th cir. 2001).  The more consistent a medical

4   opinion is with the record as a whole, the more weight it should be given.  *See* 20 C.F.R. §

5   404.1527(d)(4).

6        "At least where the treating doctor's opinion is not contradicted by another doctor, it may be

7   rejected only for 'clear and convincing' reasons."  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.

8   1991).  If the treating physician's opinion is contradicted by another doctor, the Commissioner

9   "may not reject this opinion without providing 'specific and legitimate reasons' supported by

10   substantial evidence in the record for so doing."  *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir.

11   1983).

12        District courts may not reverse an ALJ's decision on account of an error that is harmless.

13   *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006).  "[T]he burden of

14   showing that an error is harmful normally falls upon the party attacking the agency's

15   determination."  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).  If the ALJ improperly rejects a

16   medical opinion, but there is substantial evidence supporting the ALJ's decision and the error does

17   not affect the ultimate nondisability determination, the error is harmless.  *See Carmickle v.*

18   *Commissioner of Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008).  *See also Henderson v. Astrue*,

19   634 F.Supp.2d 1182, 1194 (9th Cir. 2009).

20        Plaintiff argues that the ALJ erred in rejecting Dr. Wingard's opinion as treating physician.

21   Dr. Wingard opined that Plaintiff could only sit for two hours per workday, walk for one hour per

22   work day, and sit for two hours per workday.  (AR 526).  Plaintiff raised at the hearing that the

23   Freemont Medical Center treatment notes undergirding Dr. Wingard's RFC assessment were not a

24   part of the record at the time of the hearing.  (AR 75-56).  The ALJ stated that Dr. Wingard's

25   narrative report was sufficient.  (AR 76).

26        Dr. Wingard's opinion was not uncontradicted by other doctors.  Dr. Rose opined that

27   Plaintiff could alternatively sit or stand for six hours in a workday.  (AR 359).  Dr. Edgcomb

28   reached the same conclusion.  (AR 490-497).  Furthermore, Dr. Edgcomb opined that Plaintiff's

1    alleged limitations "are out of proportion with the objective findings." (AR 495). Dr. Sherman

2    also concluded after his consultative examination the Plaintiff is able to sit, stand, and walk for six

3    hours during an 8-hour day. (AR 466). The ALJ addressed Dr. Wingard's opinions and treatment

4    of Plaintiff at length, including his RFC assessment. *See, e.g.,* AR 24, 26, 27. In light of the

5    opinions of Drs. Rose, Edgcomb, and Sherman, the ALJ concluded "after careful consideration of

6    the evidence[,] that [Plaintiff's] statements concerning the intensity, persistence, and limiting

7    effects of [her] symptoms are not credible[.]" (AR 27). The Court finds that the ALJ's

8    identification of Drs. Rose, Edgcomb and Sherman's opinions constituted "specific and legitimate"

9    reasons supported by substantial evidence for rejecting Dr. Wingard's conclusion. Because of the

10   independent substantial evidence supporting the ALJ's ultimate nondisability determination, to the

11   extent the ALJ may have erred by not considering the records undergirding Dr. Wingard's opinion,

12   such error was harmless.

13           Furthermore, "[i]f a claimant complains about disabling pain but [...] fails to follow

14   prescribed treatment[,] an ALJ may use such failure as a basis for finding the complaint unjustified

15   or exaggerated." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Regarding Plaintiff's asthma,

16   Plaintiff testified at the hearing that she continues to smoke (AR 27), in direct contravention of her

17   doctors' instructions. *See, e.g., AR 757.* The ALJ also noted that Plaintiff's back pain is

18   "exacerbated by obesity." (AR 28). The ALJ noted that there is no evidence in the record that she

19   attempted to lose weight. *Id.* Such findings further support the ALJ's finding of nondisability.

20                              **ii.      The ALJ properly developed the record**

21           Plaintiff also argues the ALJ failed to properly develop the record as to Dr. Shin. The ALJ

22   has a duty to conduct a full and fair hearing. *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)

23   (citing *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). "Ambiguous evidence, or the ALJ's

24   own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the

25   ALJ's duty to conduct an appropriate inquiry." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th

26   Cir. 2001). Dr. Shin opined that Plaintiff should not sit more than 12 minutes at a time, and could

27   not work. (AR 524). The ALJ gave limited weight to Dr. Shin's opinion because "there is no

28   evidence that Dr. Shin treated the claimant or had other information on which to base this opinion."

1    (AR 27).  The ALJ did not find the evidence ambiguous so as to trigger further development of the

2    record, but found the balance of the record did not support the limitations suggested by Drs.

3    Wingard and Shin.  The ALJ did not err in failing to inquire further into Dr. Shin's examination of

4    Plaintiff.

5               iii.    **The ALJ properly considered all limitations in making his RFC**
                        **determination**

6

7            Plaintiff also argues the ALJ did not include all of Plaintiff's limitations in the hypothetical

8    he posed the Vocational Expert Raschke.  The ALJ cannot rely upon the opinion of a testifying

9    vocational expert when the hypothetical posed to the expert is incomplete or not supported by the

10   record.  *See Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988).  The ALJ may meet his burden at

11   step five by asking a vocational expert a hypothetical question based on medical assumptions

12   supported by substantial evidence in the record and reflecting all the claimant's limitations, both

13   physical and mental, supported by the record.  *See Valentine v. Comm'r. of Soc. Sec. Admin.*, 574

14   F.3d 685, 690 (9th Cir. 2009); *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002).  "If a

15   vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's

16   testimony has no evidentiary value to support a finding that the claimant can perform jobs in the

17   national economy."  *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Matthews v.*

18   *Shalala*, 10 F.3d 678, 681 (9th Cir. 1993)).  The ALJ is not required, however, to include additional

19   limitations not supported by the record.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1164–65 (9th Cir.

20   2001).

21           The ALJ asked Raschke if "an individual who is able to lift 20 pounds and can complete a

22   full 8-hour workday if given the option to alternate between sitting and standing as needed" would

23   be able to find work.  Raschke responded affirmatively, and named general assembly and

24   cleaner/polisher positions.  (AR 91).  Plaintiff's counsel asked Raschke the following hypothetical:

25   "If the person's concentration was limited to two hours in an 8-hour day, are there any jobs in the

26   past or any other jobs the person would be able to perform?"  Raschke responded that there are not.

27           Dr. Hicks opined that Plaintiff "would have difficulty in maintaining employment" due to

28   stress but that "it is possible that she may do better in a position that is low stress and involves

1    simple repetitive tasks." (AR 474). Dr. Kotler opined that Plaintiff "is able to maintain attention

2    and concentration for 2-hour work periods to complete simple and detailed tasks." (AR 500). Dr.

3    Roldan opined that Plaintiff is "stable on medication" and "retains the ability to perform engaged

4    work with the public and retains the ability to understand, remember, and perform complex

5    instructional work."

6          In *Hill*, the ALJ failed to consider all of the claimant's impairments in determining the

7    claimant's RFC. 698 F.3d at 1162. As a result, the ALJ's hypothetical question to the vocational

8    expert did not include the omitted impairments. *Id.* Therefore, the court concluded, "the

9    hypothetical's assumption concerning Hill's residual functional capacity that she can complete a

10   normal workday and workweek without interruptions from [the omitted limitations] are not

11   supported by the record." *Id.* Here, in determining Plaintiff's RFC, the ALJ exhaustively discussed

12   Plaintiff's alleged mental impairments. (AR 23-28). The ALJ concluded that Plaintiff's

13   "longstanding mental impairment is well controlled with psychotropic medications and intermittent

14   counseling[.]" (AR 28). The assumption in the ALJ's hypothetical regarding Plaintiff's RFC that

15   her stress would not limit her ability to work is supported by the  record. Accordingly, the ALJ did

16   not err by failing to include Plaintiff's alleged mental limitations in his hypothetical to Raschke.

17                    **iv.    The ALJ did not err in considering the side effects of Plaintiff's**
                             **medication**

18

19         Plaintiff also argues the ALJ erred by making no mention of Plaintiff's medications or their

20   side effects. The Social Security Administration has ruled that "[i]n recognition of the fact that an

21   individual's symptoms can sometimes suggest a greater level of severity of impairment than can be

22   shown by the objective medical evidence alone," the ALJ "must consider in addition to the

23   objective medical evidence [...] the type, dosage, effectiveness, and side effects of any medication."

24   SSR 96-7p, 1996 WL 374186. Contrary to Plaintiff's claims, the ALJ made mention of numerous

25   medications prescribed to Plaintiff for pain management. *See, e.g., AR 25, 26, 27.* In support of

26   her contention that the ALJ erred, Plaintiff points to Dr. Shin's opinion, which noted Plaintiff's

27   medications may "cause drowsiness." (AR 525). As explained above, however, the ALJ did not

28   err in affording limited weight to Dr. Shin's opinion. Plaintiff argues that "Dr. Wingard also

1  opined that Plaintiff's medications cause difficulties with concentration." Plaintiff does not cite to

2  any evidence in the record to support this assertion, however, and the only identifiable support is a

3  June 22, 2009 chart note in which Dr. Wingard stated certain prescribed medications may cause

4  drowsiness. (AR 721-722). There is no evidence that medications caused drowsiness or lack of

5  concentration in Plaintiff, and Plaintiff has demonstrated no error as regards consideration of

6  medicinal side effects.

## CONCLUSION

8      Having reviewed, considered and weighed both the evidence that supports and the evidence

9  that detracts from the ALJ's conclusion, the Court finds the ALJ's decision is supported by

10  substantial evidence, and that the ALJ did not err as a matter of law in concluding that Plaintiff is

11  not disabled. Accordingly,

## RECOMMENDATION

13     **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Remand (#12) be **denied**.

14     **IT IS FURTHER RECOMMENDED** that Defendant's Cross-Motion to Affirm (#14) be

15  **granted**.

## NOTICE

17     Under Local Rule IB 3-2, any objection to this Finding and Recommendation must be in

18  writing and filed with the Clerk of the Court within fourteen (14) days. Appeals may been waived

19  due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142

20  (1985). Failure to file objections within the specified time or failure to properly address and brief

21  the objectionable issues waives the right to appeal the District Court's order and/or appeal factual

22  issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991);

23  *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

24     DATED this 5th day of April, 2013.

25

26  _____
   GEORGE FOLEY, JR.
   United States Magistrate Judge

27

28